# EXHIBIT B

# EXHIBIT B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK        Docket No.: 2:23-cv-09038(NCM)(AYS)
------------------------------------------------------------------
GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY COMPANY,

                Plaintiffs,

   -against-

HARBOR MEDICAL GROUP, P.C., CONFIDENT MEDICAL SERVICES, P.C., COASTAL MEDICAL, P.C., ALEXANDR ALEXEEVICH ZAITSEV, M.D., MARK KAMINAR, ANTHONY BENEVENGA, FINANCIAL VISION GROUP, LLC, FINANCIAL VISION GROUP II, LLC FORMERLY KNOWN AS ADF EQUITIES, LLC, FINANCIAL VISION GROUP III, LLC, FINANCIAL VISION GROUP IV, LLC, DANIEL KANDHOROV, AND JOHN DOE DEFENDANTS NOS. 1-5.

                Defendants.
------------------------------------------------------------------

## DEFENDANT, ALEXANDR ALEXEEVICH ZAITSEV's RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Defendants, ALEXANDR ALEXEEVICH ZAITSEV, M.D., MARK KAMINAR, and ANTHONY BENEVENGA, by their attorneys, SCHWARTZ, CONROY & HACK, PC, for their response to Plaintiff, GOVERNMENT EMPLOYEES INSURANCE COMPANY, GEICO INDEMNITY COMPANY, GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY COMPANY ("GEICO"), First Set of Interrogatories Directed to Defendant, ALEXANDR ALEXEEVICH ZAITSEV, M.D., states as follows:

### GENERAL OBJECTIONS

1

Each and every Interrogatory responded to herein is subject to the General Objections set forth below. These objections are set forth here to avoid the duplication and repetition of restating them in each response. All of the following General Objections are incorporated by reference into each and every Response set forth below, whether or not specifically delineated therein.

1. Defendant objects to the Interrogatories to the extent that they purport to impose obligations upon Defendant in excess of those created by law.

2. Defendant objects to the Interrogatories to the extent that they seek the disclosure of attorney-client privileged communications, attorney or party work product, trial preparation material or any other material or information encompassed within any applicable privilege provided by law or otherwise protected from disclosure. Any disclosure of privileged information or release of privileged documents is unintentional and inadvertent and thus shall not constitute a waiver of any applicable privilege.

3. Defendant objects to the Interrogatories to the extent that they seek the production of documents or information that contains confidential information and will not produce such documents or provide such information in the absence of appropriate protective measures agreed to by the parties and approved by the Court.

4. Defendant objects to the Interrogatories to the extent that they are overly broad, vexatious or seek information irrelevant to the subject matter of this action and not reasonably calculated to lead to the discovery of admissible evidence.

5. Defendant objects to the Interrogatories to the extent that they seek information that is unduly burdensome to obtain or produce.

6. Defendant objects to the Interrogatories to the extent that responses have previously been provided to Plaintiff.

7. Defendant objects to the Interrogatories to the extent that they are ambiguous, vague or otherwise incomprehensible and/or not sufficiently descriptive to permit a meaningful response.

8. Defendant objects to the Interrogatories to the extent that they seek a response that is duplicative of the response to one or more other Interrogatories.

9. Defendant objects to the Interrogatories to the extent that they include undefined words, phrases and terms, which tend to make them unclear and/or ambiguous.

10. Defendant objects to the Interrogatories to the extent that they include definitions for words, phrases and terms, which tend to make the responses to the Interrogatories overly broad or unduly burdensome.

11. Defendant objects to the extent that the Interrogatories contain no temporal limitations, or include temporal limitations that make them unduly burdensome and/or that exceed the time period at issue in this action, and Defendant will provide information for a reasonable time period consistent with the facts and occurrences at issue in this litigation.

12. Defendant objects to all Interrogatories as being inherently improper to the extent that they seek to compel Defendant to disprove baseless and unsubstantiated accusations made by Defendant, and to prove his own lack of culpability.

In providing these General Objections to the Interrogatories, Defendant does not in any way waive nor does he intend to waive, but rather intends to preserve and is preserving:

A. all objections as to competence, relevance, materiality and admissibility of any document or information that may be produced pursuant to the Interrogatories or the subject matter of any request;

B. all objections as to vagueness, ambiguity and undue burden;

3

  C. all objections to the use of any documents that may be produced, or of the subject matter of any Interrogatory Response, in any other or subsequent proceedings, including the hearing of this or any other related or unrelated action, trial, hearing, case or controversy; and

  D. all objections to any request for further responses to the Interrogatories or any other request for documents or information, or other discovery requests involving or related to the subject matter of the Interrogatories.

All responses are made on an express reservation of objections as set forth above and, in some instances, below, and no response shall be deemed, and specifically is stated not to be, a waiver of such objection(s).

## RESPONSE TO INTERROGATORIES

1. Identify all corporations, partnerships, limited liability companies, limited liability partnerships, and any other entity or business that You have: (i) owned, in whole or in part; (ii) been employed by; (iii) received payment from; and/or (iv) provided any type of service relating to a healthcare provider or healthcare practice that provided goods and/or healthcare services. For each entity/business, identify the name of the entity/business, its address, the dates of your ownership, employment and/or involvement, and a description of Your title, duties and responsibilities.

**RESPONSE: 87% of Ridgewood Diagnostic Laboratory, LLC, since 2016. Dr. Zaitsev is the managing member and president and CEO.**

2. Identify the nature of the FVG Entities' business, including any services provided by or through it.

**RESPONSE: The Financial Vision entities are funding companies which provided funding to medical providers.**

3. Identify each person who: (i) has been a member, officer and/or director of the FVG Entities; or (ii) held a financial interest in the FVG Entities. For each person identified who has been one of the FVG Entities' members, officers, and/or directors, set forth the dates on which each such person was one of the FVG Entities' members, officers, and/or directors. For each person identified who has held a financial interest in the FVG Entities, state the respective interest and the time frame in which the interest was held.

**RESPONSE:**

Financial Vision Group, LLC

(i) Members are Alexander Zaitsev, Daniel Kandhorov; FHJ Vision Partners LLC (Managers Howard Fensterman Frank Carone and Jordan Fensterman); and FBH Capital Group, LLC.
(ii) Managing Members are Alexander Zaitsev and Daniel Kandhorov.
(iii) No nonmember has a financial interest.

Financial Vision Group II, LLC d/b/a ADF Equities

(i) Members are Alexander Zaitsev, Daniel Kandhorov, FHJ Vision Partners LLC (Managers Howard Fensterman Frank Carone and Jordan Fensterman); and FBH Capital Group, LLC.
(ii) Managing Members are Alexander Zaitsev and Daniel Kandhorov.
(iii) No nonmember has a financial interest.

Financial Vision Group III, LLC

(i) Members are Alexander Zaitsev, Daniel Kandhorov, FHJ Vision Partners LLC (Managers Howard Fensterman Frank Carone and Jordan Fensterman); and FBH Capital Group, LLC.
(ii) Managing Members are Alexander Zaitsev and Daniel Kandhorov.
(iii) No nonmember has a financial interest.

Financial Vision Group IV, LLC

(i) Members are Alexander Zaitsev, Daniel Kandhorov, DMC Capital Group LLC and FBH Capital Group, LLC.
(ii) Managing Members are Alexander Zaitsev and Daniel Kandhorov.
**No nonmember has a financial interest**

4. Identify each individual and/or entity that assisted with or participated in the creation, formation, licensing, financing, and/or operation of the FVG Entities and describe their involvement.

**RESPONSE:** Dr. Zaitsev. Daniel Kandhorov. Howard Fensterman, Frank Carone and Jordan Fensterman. Zaitsev and Kandhorov were members of financial vision, while the Fenstermans and Carone were managers of FHJ Vision partners LHC, which was a member of Financial vision. All participated in the creation, formation, and operation of the Financial Vision entities.

5. Describe all actions taken by You or for or on behalf of any individual or entity, in relation to the recruitment of Kelly and the incorporation, formation, start-up, funding and/or financing of the Provider Defendants.

**RESPONSE:** Anthony Benevenga introduced Dr. Zaitsev to Dr. Kelly a couple of years before 2019. He approached me while Dr. Zaitsev when he was practicing medicine and he came to Dr. Zaitsev when he was looking for part-time workers. He claimed to be a pain management doctor but he did not fit what Dr. Zaitsev was looking for. Kandhorov later asked Dr. Zaitsev if he had any physicians who were interested in a medical director position. Dr. Zaitsev spoke to Kelly who was looking for work and had financial issues. Dr. Zaitsev told him there was a medical director position available and would introduce him to Daniel Kandhorov, which he did. Dr. Zaitsev no other knowledge as to the incorporation, formation, start-up, funding and/or financing of the Provider Defendants.

6. Describe Your involvement and/or association with Kelly and the Provider Defendants, including, but not limited to, identifying the names of all individuals who referred Kelly and/or the Provider Defendants to You or the FVG Entities and describing all documents that reflect any agreement between You or the FVG Entities and Kelly and/or the Provider Defendants.

**RESPONSE:** Anthony Benevenga introduced Dr. Zaitsev to Dr. Kelly a couple of years before 2019. He approached me while Dr. Zaitsev when he was practicing medicine and he came to Dr. Zaitsev when he was looking for part-time workers. He claimed to be a pain management doctor but he did not fit what Dr. Zaitsev was looking for. Kandhorov later asked Dr. Zaitsev if he had any physicians who were interested in a medical director position. Dr. Zaitsev spoke to Kelly who was looking for work and had financial issues. Dr. Zaitsev told him there was a medical director position available and would introduce him to Daniel Kandhorov, which he did. Dr. Zaitsev no other knowledge as to the incorporation, formation, start-up, funding and/or financing of the Provider Defendants. There is no agreement between Dr. Zaitsev and Kelly or the Provider Defendants. The Financial Vision agreements are attached to the prior document production.

7. Identify and describe each agreement, whether written or oral, regarding any service, including financing, that You, the FVG Entities, or any other entity You own provided related to or concerning Kelly and/or the Provider Defendants, including all documents that reflect the retention of the services/funding to Kelly and/or the Provider Defendants.

**RESPONSE: The funding documents for Financial Vision are attached to the discovery response provided by Mark Kaminar. Dr. Zaitsev had no persona agreement, nor did any entity he owns, related to Kelly or the Provider Defendants.**

8. Describe Your relationship with each of the Defendants, and in connection with this Interrogatory, identify every agreement, contract, retainer, directive, referral arrangement, debt, service invoice, transaction, and/or demand or receipt for payment between You and each Defendant that relates to or concerns Kelly and/or the Provider Defendants.

**RESPONSE: Dr. Zaitsev has no relationship with Harbor Medical Group, Confident Medical Services, P.C. or Coastal Medical P.C. Mark Kaminar is his personal accountant. Anthony Benevenga is a friend and business associate. Dr. Zaitsev is a member of the Financial Vision companies. Daniel Kandhorov is associated with Financial vision. Dr. Zaitsev has no agreements with the Provider Defendants, as defined, or Anthony Benevenga,**

6

or Mark Kaminar. The only agreement with Kandhorov is as part of Financial Vision and the documents for those Limited Liability Company Agreements are part of the prior document production.

9. Identify and describe the nature of all agreements, whether oral or written, relating to or concerning Kelly and/or the Provider Defendants that relate to any service provided by You or which resulted in any payment to You, regardless of whether You were a signatory to the agreements.

**RESPONSE: Dr. Zaitsev has no agreements relating to or concerning Kelly and/or the Provider Defendants. The Financial Vision funding agreements are attached to the Kaminar document production.**

10. Identify and describe Your involvement with the Healthcare Services, including the identification of any individuals that performed any of the Healthcare Services, and for each such individual identified, describe: (i) the manner in which they performed any of the Healthcare Services; and (ii) Your relationship with that individual.

**RESPONSE: Dr. Zaitsev had no agreement no involvement with the Healthcare Services for the Provider Defendants. Dr. Zaitsev is not aware of anyone who provided any Healthcare Services for the Provider Defendants.**

11. Identify all documents relating to or reflecting communications between You and any of the other Defendants concerning the Healthcare Services, the operation and/or management of the Provider Defendants, the submission of bills for the Healthcare Services in the name of Kelly and/or the Provider Defendants, and/or the services provided by You, the FVG Entities or any other entity You own in relation to Kelly and/or the Provider Defendants.

**RESPONSE: Dr. Zaitsev is not aware of any such documents reflecting said communications. Dr. Zaitsev provided no services to Dr. Kelly and/or the Provider Defendants. Kandhorov asked Dr. Zaitsev if he had any physicians who were interested in a medical director position. Dr. Zaitsev spoke to Kelly who was looking for work and had financial issues. Dr. Zaitsev told him there was a medical director position available and would introduce him to Daniel Kandhorov, which he did. Dr. Zaitsev is not aware of any communications, other than attached to the prior document response, between the Financial Vision entities and any of the defendants.**

12. Identify all documents relating to or reflecting communications between You and any third-party (other than the Defendants) concerning the Healthcare Services, the operation and/or management of the Provider Defendants, the submission of bills for the Healthcare Services in the name of Kelly and/or the Provider Defendants, and/or the services provided by You, the FVG Entities or any other entity You own in relation to Kelly and/or the Provider Defendants.

**RESPONSE: Dr. Zaitsev is not aware of any such documents reflecting said communications. Dr. Zaitsev provided no services to Dr. Kelly and/or the Provider Defendants, was not involved in the operation or management of the Provider Defendants, was not involved in the submission of bills for the Provider Defendants, and is not aware of any communications between the Financial Vision entities and any third-parties.**

13. Identify each individual and/or entity which whom You communicated in connection with the billing, collections, or funding associated with the Healthcare Services. For each individual/entity identified, provide the name, address, and involvement with the Provider Defendants, and describe the manner in which You communicated with that person (i.e., in person, telephone, email, fax, text message, through social medial, WhatsApp) including the specific phone numbers, fax numbers, email addresses, and social media accounts used to communicate with each identified individual/entity.

**RESPONSE: Dr. Zaitsev did not communicate in connection with billing or collection in association with the Healthcare Services of the Provider Defendants. The only communication regarding funding would have been in person or by telephone with the members of Financial Vision and/or Kaminar with phone number** 718-956-6565.

14. Identify all bank accounts (including the account number and financial institution) that were used by You, the FVG Entities, or any other entity You own that: (i) distributed any funding related to Kelly and/or the Provider Defendants; or (ii) received monies that were issued by any automobile insurer for the Healthcare Services billed in the name of Kelly and/or the Provider Defendants.

**RESPONSE: None of Dr. Zaitsev's bank accounts, including entities he owns, distributed any monies to Kelly or the Provider Defendants or received monies issued by any automobile insurer for the Healthcare Services billed in the name of Kelly and/or the Provider Defendants.**

15. For each bank account identified in response to Interrogatory No. 14, identify each person that has been authorized to: (i) view and/or access each bank account (electronically or otherwise); (ii) sign and/or issue checks from the bank account; (iii) endorse checks issued from each bank account; and (iv) make withdrawals or transfers funds from each bank account.

**RESPONSE: Upon information and believe, the members of the Fensterman d and Carone as well as Kandhorov and myself in response to (i) through (iv). Kaminar could access and view the account .**

16. Identify all payments of money issued by You, the FVG Entities, or any other entity You own in relation to or on account of the Provider Defendants, and for each such payment, identify: (i) who issued the payment; (ii) the method of payment (e.g., cash, check, electronic transfer, or other method); (iii) the financial institution and account number associated with the payment; (iv) the individual or entity the payment was issued to; (v) the amount of the payment; and (vi) if via cash, check or any non-electronic method, the individual who physically received the payment.

**RESPONSE: No money was issued by Dr Zaitsev or any entity Dr. Zaitsev owns. Financial Vision payments would be set forth in the documents produced by Mark Kaminar. Kaminar and Abrams Fensterman have all of the information and documents related as far Dr. Zaitsev knows.**

17. Identify all payments of money received by You, the FVG Entities, or any other entity You own in relation to or on account of the Provider Defendants, and for each such payment,

8

identify: (i) who issued the payment; (ii) the method of payment (e.g., cash, check, electronic transfer, or other method); (iii) the financial institution and account number associated where payment was deposited; (iv) who the payment was issued to; and (v) total amount received.

**RESPONSE: Dr. Zaitsev did not receive any money from the Provider Defendants nor did any entity he owns**. The Financial Vision Entities received payment through Abrams Fensterman's collection of receivables.

18. Identify all individuals and/or entities with whom You communicated that provided any services for or on behalf of the Provider Defendants. In responding to this Interrogatory, your response should include (but not be limited to) the identification of individuals and/or entities that provided (i) operation and/or management services; (ii) marketing and/or advertising services; (iii) legal and/or arbitration services, including collection of No-Fault insurance receivables and the incorporation, formation, or start-up of the Provider Defendants; (iv) billing and collection services; (v) accounting, bookkeeping, or tax preparation services; (vi) clerical/administrative services; (vii) consulting of any type; (viii) funding; and/or (ix) health care staffing services.

**RESPONSE: (i) Defendant Kandhorov spoke to Dr. Zaitsev about needing medical director and he spoke to Dr. Kelly to put him in touch with Kandhorov. (ii) Dr. Zaitsev spoke to no one that he is aware of that was involved in marketing and/or advertising regarding the Provider Defendants. (iii) Dr. Zaitsev spoke to no one that he is aware of that was involved in the incorporation, formation, or start-up of the Provider Defendants other than as related in response to (i). (iv) Dr. Zaitsev has spoken to Abrams Fensterman and upon information and belief, they did billing and collection for one or more Provider Defendants. (v) Dr. Zaitsev has spoken to Mark Kaminar and is aware he provided Bookkeeping services to one or more providers. (vi) Dr. Zaitsev did not speak to anyone involved in clerical/administrative services as far as he is aware. (vii) Dr. Zaitsev did not speak to anyone involved in consulting as far as he is aware. (viii) Dr. Zaitsev has spoken with members of Financial Vision including Kandhorov and Financial Vision was involved in funding Harbor. (ix) ) Dr. Zaitsev did not speak to anyone involved in healthcare staffing as far as he is aware.**

19. For each individual and/or entity identified in response to Interrogatory No. 18, identify the type of service that each individual/entity provided, whether there were any oral or written agreements, and the time period in which the services were provided.

**RESPONSE: Dr. Zaitsev is not aware of any services provided by anyone with the exception of Defendant Kandhorov spoke to Dr. Zaitsev about needing medical director and he spoke to Dr. Kelly to put him in touch with Kandhorov. Financial Vision was involved in funding of Harbor. Kaminar was involved in bookkeeping/accounting services. Abrams Fensterman was involved in billing and collection as far as he knows. He does not know the time period.**

20. Identify and describe all phone numbers, email addresses, fax numbers, social media accounts, and other methods of communication used as part of conversations: (i) between You and any of the Defendants; or (ii) between You and anyone regarding the Provider Defendants.

9

**RESPONSE:** Dr. Kelly's number 732-804-8590. Dr. Zaitsev's number 862-703-0506. Defendant Kandhorov's e-mail. daniel.kamg@gmail.com and phone number 718-744-4406. Mark Kaminar's phone number 973-567-4002 and e-mail mark@abttax.net. Benevenga, e-mail antb109@yahoo.com, phone 201-805-1738.

21. Identify every office or practice protocol, policy, manual, standard operating procedure, handbook, directive, training guidance, staff instruction, and/or any other reference material that is or was written, developed, implemented, or otherwise used by the FVG Entities, concerning the funding of healthcare practices that participate in the submission of billing to New York State automobile insurance companies, including GEICO.

**RESPONSE: Dr. Zaitsev is unaware of the existence of any information or documents responsive to this Interrogatory.**

22. Identify the number of times that You have given sworn testimony, either in the course of an examination under oath, a deposition or at trial. For each instance identified, state the date that the testimony was given, the nature of the proceeding (i.e., examination under oath, deposition or trial) and the insurance company (if applicable) that was involved in the proceeding in which testimony was given.

**RESPONSE: Objection to the Interrogatory as overly broad and seeks irrelevant information not calculated to lead to admissible evidence to the extent it seeks testimony in nonhealthy care related proceedings. Notwithstanding said objections, Dr. Zaitsev was involved in five Examinations Under Oath, involving GEICO, STATE FARM, and PROGRESSIVE. Dr. Zaitsev has been sued by Allstate Insurance Company once (23-cv-6194 in EDNY) and GEICO three times.**

23. Identify all criminal, disciplinary, or administrative proceedings, or investigations involving You.

**RESPONSE: Dr. Zaitsev is not aware of any criminal, disciplinary, or administrative proceedings against him.**

Dated: Garden City, New York
June 2, 2025

                                                  SCHWARTZ CONROY & HACK, P.C.

                                                  By: *Matthew J. Conroy*
                                                  Matthew J. Conroy
                                                  *Attorneys for the Defendants*
                                                  ALEXANDR ALEXEEVICH ZAITSEV, M.D., MARK KAMINAR, and ANTHONY BENEVENGA
                                                  666 Old Country Road, 9th Floor
                                                  Garden City, New York, 11530
                                                  (516) 745-1122

TO:

RIVKIN RADLER LLP
Michael A. Sirignano, Esq.
Barry I. Levy, Esq.
Jennifer Abreu, Esq.
Joanna Rosenblatt, Esq.
*Attorneys for Plaintiff, GEICO*
926 RXR Plaza
Uniondale, New York 11556
(516) 357-3000

## DECLARATION

STATE OF NEW JERSEY ) 
) ss: 
COUNTY OF BERGEN )

    I, ALEXANDR ALEXEEVICH ZAITSEV, M.D., upon oath do say and deposes under penalty of perjury and says that I am a Defendant in the above-entitled action; that I have read the foregoing response to Plaintiff GEICO's First Set of Interrogatories Directed to Defendant, ALEXANDR ALEXEEVICH ZAITSEV, M.D., and that the same is true to my own knowledge.

June 2, 2024

By: _____
ALEXANDR ALEXEEVICH ZAITSEV, M.D.